James Strokes, Appellant v. Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Argued January 31, 1977, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*David A. Searles,* with him *James B. Lieber,* for appellant.

*David Bianco,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 15, 1977:

This is an appeal filed by James Strokes (Strokes) from an order of the Unemployment Compensation

Board of Review (Board), dated March 1, 1976. The order denies Strokes benefits under Section 3 of the Unemployment Compensation Law (Act),[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §752, for the reason that his unemployment did not result "through no fault of his own."

Strokes was a truck driver for the Delaware Valley Hospital Laundry. His weekly salary was $170. On April 28, 1975, Strokes was informed by his employer that its insurance carrier had received notice that Strokes' motor vehicle license had been suspended. Strokes produced a valid driver's license and stated that he was unaware of any suspension.[2] His employer thereupon told him to clear the matter up. He continued working and next met with his employer on May 12, 1975. Strokes stated at this meeting that he did not wish to drive on a license that was not valid. He was told by his employer that there were no other positions available and that he had until May 16 to clear up the matter of the suspension. He then drove to Harrisburg and learned the basis for the suspension. A judgment obtained by a third party in an unrelated civil action had been entered against him in the amount of $394. Because Strokes had not satisfied the judgment, his operator's license had been suspended pursuant to Section 1413 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* 75 P.S. §1413.[3] Strokes did not return to see his

---

[1] This Court held in *Unemployment Compensation Board of Review v. Ostrander,* 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975), that Section 3 provides a substantive basis upon which to deny unemployment benefits.

[2] The record does not indicate why Strokes did not receive official notification of the suspension of his operator's license.

[3] It should be noted that The Vehicle Code has been newly codified under 75 Pa. C.S. §1550, effective July 1, 1977.

employer until some time after June 3, 1975. At this time, he asked for employment which would not require driving and was once again informed that there was no other position available. Because Strokes was unable to drive, his employment was terminated.

Section 3 of the Unemployment Compensation Act, 43 P.S. §752, provides:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment* and its resulting burden of indigency falls with crushing force upon the unemployed worker. . . . Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed *through no fault of their own.* . . . The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the·citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this Act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.* (Emphasis added.)

Strokes contends that because the referee and the Board misconstrued the meaning of the word "fault" as found in the phrase "through no fault of their own," Section 3 was misapplied to deny him benefits. Alternatively, he argues that even if the Section was properly applied, he cannot be denied benefits under its provisions as the term "through no fault of their own" is unconstitutionally vague. We find these arguments to be without merit.

Strokes contends that upon application of Section 3 as a substantive basis upon which to deny benefits, the word "fault" as found therein must be strictly construed to entail a crime of a serious nature. Such an argument is contrary to the fundamental intent of the Act. The Supreme Court of this Commonwealth stated in *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 477, 211 A.2d 463, 466 (1965), that the Act is aimed at helping those in a situation of "involuntary unemployment." The Court equated "involuntary unemployment" with the term in Section 3 "through no fault of their own." Admittedly, actions resulting in unemployment deemed to be the "fault" of a claimant under the Act require a degree of culpability. *See Mills Unemployment Compensation Case,* 164 Pa. Superior Ct. 421, 65 A.2d 436 (1949), *rev'd. on other grounds,* 362 Pa. 342, 67 A.2d 114 (1949). Nowhere, however, does the Act require the degree of culpability urged by Strokes. The Court in *Lybarger* stated that workers who had entered into a contract which provided for an automatic layoff after earning a specified amount, were not unemployed "through no fault of their own." Certainly the degree of "fault" demonstrated by the workers in *Lybarger* is no greater than that of Strokes. We are aware that the Unemployment Compensation Act is a remedial statute and therefore requires a liberal and broad construction to achieve its objective. *MacFarland v. Unemployment Compensation Board of Review,* 158 Pa. Superior Ct. 418, 422, 45 A.2d 423, 426 (1946). It is incongruous, however, to require a greater degree of culpability in finding "fault" in a claimant under Section 3 than under any other section of the Act. Strokes had adequate time to either pay the judgment or make arrangements to settle his differences with the successful third party claimant. As he did not do either, it can-

not be said that his unemployment was through "no fault of his own." The record supports a denial of benefits under Section 3 of the Act.

Strokes also contends that the term "through no fault of their own" does not provide an adequate standard to inform an unemployment compensation claimant of the burden of proof needed to establish eligibility for benefits. The key to understanding the phrase is the word "fault." The consistent meaning of this word as used in the Act has been explained at various times by the courts of this State. For example, in *Mills Unemployment Compensation Case, supra,* the Superior Court stated, "Fault is more than volition, more than a voluntary act. . . . '[F]ault' always connotes an act to which blame, censure, impropriety, shortcoming, or culpability attaches." This Court held, in dismissing a similar due process argument in *Daniels v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 241, 309 A.2d 738 (1973), that the word "fault" as used in the Act was not such an indefinite and vague word as to be constitutionally defective.

We affirm.

### Order

And Now, this 15th day of April, 1977, the order of the Unemployment Compensation Board of Review, dated March 1, 1976, denying benefits to James Strokes, is hereby affirmed.