Michael W. PALLADINO, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 23, 2013.
Decided Dec. 19, 2013.

Anne P. Felker, Bethlehem, for petitioner.

Judith M. Gilroy, Assistant Counsel, for respondent.

Jennifer S. Doran, Bethlehem, for intervenor City of Bethlehem.

BEFORE: LEADBETTER, Judge, BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Michael W. Palladino (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of an Unemployment Compensation Referee (Referee), denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we reverse.

Claimant applied for unemployment compensation benefits after being discharged from his employment as an operations supervisor for the City of Bethlehem's (Employer) wastewater treatment plant. The Allentown UC Service Center (Service Center) issued a determination, finding Claimant ineligible for benefits pursuant to Section 3 of the Law,[2] relating to declaration of public policy. Claimant appealed the Service Center's determination, and a Referee conducted a hearing.

Following the hearing, the Referee denied Claimant unemployment compensation benefits, concluding that Employer discharged Claimant for willful misconduct pursuant to Section 402(e) of the Law. In so doing, the Referee made the following relevant findings:

1. Claimant started working for the City of Bethlehem in December 1986 and was last employed as a full-time operations supervisor earning approximately $2835 bi-weekly. Claimant's last day of work was August 17, 2012.

2. Claimant's job duties included supervision of plant operators and truck drivers at the City's wastewater treatment plant.

3. Employer's Code of Ethics states, in relevant part, As an Employee and Official of the City of Bethlehem I will strive to: Maintain a course of conduct at all times which will bring credit to myself and the City of Bethlehem and avoid actions which create the appearance [of] impropriety.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 752. Section 3 of the Law provides:
   Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

4. Claimant should have been aware of the Code of Ethics.

5. In 2006, shortly after he was promoted from plant operator to operations supervisor, Claimant was charged with Driving under the Influence (DUI).

6. Employer advised Claimant this type of behavior could not happen again.

7. In or around the fall of 2006, Employer received reports that Claimant was intoxicated and drove into a fence during an off-duty visit to the plant.

8. Employer advised Claimant any further incidents of a similar nature were "career ending" and required Claimant to participate in treatment through the Employee Assistance Program.

9. On August 18, 2012, Claimant was arrested by Bethlehem City Police and charged with DUI, fleeing or eluding police and other summary traffic offenses.

10. On August 19, 2012, the Director of Water & Sewer Services received a telephone call from Claimant stating he was incarcerated.

11. On August 20, 2012, Claimant was suspended with pay pending an investigation.

12. Claimant advised Employer after he went to the hospital on August 18, 2012 for emergency treatment of an injury, he became thirsty while driving home and consumed a container of Bloody Mary cocktails he had in his vehicle.

13. Claimant did not recall driving the wrong way on a one-way street or his breathalyzer test results of 0.24.

14. By letter dated November 7, 2012, Employer discharged Claimant for violation of the Code of Ethics.

(Referee's decision, attached to Petitioner's br.)

The Referee acknowledged that the Service Center denied benefits pursuant to Section 3 of the Law, but the Referee determined that Section 402(e) of the Law controls the benefit entitlement and that the parties were on notice that Section 402(e) was a potential issue in the matter. In reaching the determination that Claimant was not entitled to benefits based on Section 402(e), the Referee reasoned that

Claimant was a public employee and a supervisor at the City's wastewater treatment plant. Employer has shown it maintains a Code of Ethics requiring employees to conduct themselves at all times in a manner which will bring credit to the City. As a supervisor, Claimant should have been aware of the Code of Ethics. Claimant was on notice, as a result of two prior alcohol related events, that his job was in jeopardy when he chose to drink alcohol while driving. As a result of Claimant's actions, he was arrested and charged with various criminal offenses including DUI. As Claimant's actions were a violation of the Code of Ethics and a disregard of the standards of behavior which Employer has a right to expect of an employee, Claimant's actions rise to the level of willful misconduct connected with the employment and he must be found ineligible for benefits under Section 402(e) of the Law.

(*Id.*)

Claimant then appealed to the Board. The Board affirmed, adopting and incorporating the Referee's findings of fact and conclusions of law. The Board explained that Claimant's actions were a violation of Employer's Code of Ethics, that Claimant

failed to show the existence of similarly situated management employees who Employer did not discharge, and that Claimant was not in recovery at the time of his second DUI, so he was not covered under the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101–12213.

On appeal,[3] Claimant argues that: (1) the Board applied the wrong legal standard when it applied Section 402(e) of the Law rather than Section 3 of the Law; (2) the Board erred in denying benefits based on off-duty conduct absent evidence of any impact on Claimant's job performance; (3) substantial evidence does not support the Board's finding that Claimant should have been aware of Employer's Code of Ethics; (4) the Board erred in failing to render a finding as to the reasonableness of Employer's Code of Ethics and substantial evidence does not exist to support a finding of reasonableness; (5) substantial evidence does not exist to support the Board's finding that Claimant's conduct violated Employer's Code of Ethics; (6) substantial evidence does not exist to support the Board's finding that Claimant failed to show that similarly situated management employees were not discharged; (7) the Board erred in concluding that

Claimant's suspension and termination did not violate the ADA; and (8) the Board erred in concluding that Claimant engaged in willful misconduct.

First, we address Claimant's argument that the Board erred when it applied Section 402(e) of the Law, rather than Section 3 of the Law, to determine Claimant's eligibility for unemployment compensation benefits. "Sections 3 and 402(e) of the Law are not parallel legal theories." *Burger v. Unemployment Comp. Bd. of Review*, 569 Pa. 139, 144, 801 A.2d 487, 491 (2002). Rather, " 'Section 402(e) is used to disqualify claimants for *work-related* misconduct,' " whereas " 'Section 3 is used to disqualify claimants for *non-work-related* misconduct which is inconsistent with acceptable standards of behavior and which directly affects the claimant's ability to perform his assigned duties.' " *Id.* (emphasis in original) (quoting *Se. Pa. Transp. Auth. v. Unemployment Comp. Bd. of Review (SEPTA)*, 96 Pa.Cmwlth. 38, 506 A.2d 974, 977 (1986)). Under Section 402(e) of the Law, the employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct.[4] *Walsh v. Unemployment Comp. Bd. of Review*, 943

---

**3.** This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159, 1161 (1992).

**4.** The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

(a) wanton or willful disregard of employer's interests, (b) deliberate violation of the employer's rules, (c) disregard of standards

of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 573 Pa. 594, 600, 827 A.2d 422, 425 (2003). An employer, seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies, must prove the existence of the rule or policy and that the claimant violated it. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa.Cmwlth.2008). If, however, the claimant can show good cause for the violation—*i.e.*, "that the actions which resulted in the discharge were justifiable and reasonable under the circumstances"—then there should be no finding of willful misconduct. Whether an employee's conduct constituted willful mis-

A.2d 363, 369 (Pa.Cmwlth.2008). Under Section 3 of the Law, the employer bears the burden to prove "(1) that the claimant's conduct was contrary to acceptable standards of behavior and (2) that the claimant's unacceptable conduct directly affects or reflects upon the claimant's ability to perform his assigned duties."[5] *Frazier v. Unemployment Comp. Bd. of Review*, 833 A.2d 1181, 1184–85 (Pa.Cmwlth. 2003). In analyzing whether a claimant is eligible for unemployment compensation, it is important to recognize that "the question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons, yet remain eligible for benefits." *Burger*, 569 Pa. at 144, 801 A.2d at 490.

■■■■ As noted above, Section 402(e) of the Law disqualifies a claimant based upon work-related misconduct. "Off-duty misconduct will not support a finding of willful misconduct under [Section] 402(e) unless it extends to performance on the job; in such case, the misconduct becomes work-related."[6] *Id.*, 801 A.2d at 491. Thus, an employee's act of engaging in off-duty behavior that is merely "unacceptable to an employer does not necessarily equate to" willful misconduct under Section 402(e) of Law. *Id.* at 145, 801 A.2d at 491. There must be an aspect of the conduct that renders it work-related.

■■■■ "Individuals disqualified under Section 3 [of the Law] are those who are unemployed through their own fault, arising from a non-work related incident." *Jones v. Unemployment Comp. Bd. of Review*, 86 Pa.Cmwlth. 405, 485 A.2d 526, 528 (1984), *aff'd*, 513 Pa. 45, 518 A.2d 1150

conduct is a matter of law subject to this Court's review. *Id.* at 368.

5. With regard to the first prong, conduct contrary to acceptable standards of behavior may be shown by establishing that the conduct led to an arrest, although lesser degrees of fault may be sufficient. *SEPTA*, 506 A.2d at 977. As to the second prong, in order for the conduct to equate to willful misconduct, it must " 'reflect directly on' ... job performance, [and] there must be evidence, not just a vague extrapolation of safety [or other] problems." *Burger*, 569 Pa. at 145, 801 A.2d at 491. A court may consider a number of factors to determine whether a claimant's criminal

> conduct directly reflects upon his ability to do his job: (a) the specific nature of the offense committed by [the c]laimant; (b) the nature of [the c]laimant's assigned duties; (c) whether [the c]laimant's job requires any special degree of trust on the part of the employer; and (d) any other circumstances that may particularly affect [the c]laimant's ability to do his job, including whether the crime occurred on or off [the e]mployer's premises, and whether or not it involved any of [the e]mployer's other workers or clients.

*SEPTA*, 506 A.2d at 977.

6. For instance, in *Burger*, the claimant, who the employer employed as a certified nurse's aide in a nursing home, admitted to engaging in marijuana use every evening, but she claimed that she did not report to work directly after using marijuana. The employer also believed her to be misusing prescription medications. The employer, which had a policy prohibiting employees from reporting to work under the influence of illegal drugs or the improper use of prescription medication, terminated the claimant's employment. The referee, although he found nothing in the record to establish that the claimant's admitted or non-admitted drug use affected her work performance, nevertheless determined that the claimant's conduct fell within the general definition of willful misconduct. This Court affirmed the denial of benefits under Section 402(e) of the Law and alternatively affirmed under Section 3 of the Law. The Supreme Court reversed, concluding that in the absence of findings that her drug use affected the performance of her work, the off-duty conduct did not constitute willful misconduct. The Supreme Court did not address whether the conduct could have disqualified the claimant under Section 3 of the Law, because that issue had not been preserved and, therefore, was waived.

(1986). The fault must be incompatible with the work responsibilities. *Evans v. Unemployment Comp. Bd. of Review,* 86 Pa.Cmwlth. 297, 484 A.2d 822, 825 (1984); *see also Adams v. Unemployment Comp. Bd. of Review,* 40 Pa.Cmwlth. 486, 397 A.2d 861 (1979) (holding claims manager convicted of conspiracy and mail fraud properly denied benefits under Section 3); *Unemployment Comp. Bd. of Review v. Derk,* 24 Pa.Cmwlth. 54, 353 A.2d 915 (1976) (holding school bus driver arrested on morals charges properly denied benefits under Section 3).

■ The type of off-duty misconduct is not dispositive of whether eligibility must be examined under Section 3 of the Law or Section 402(e) of the Law, as the basis for the separation from employment must also be considered. *See Manross v. Unemployment Comp. Bd. of Review,* 132 Pa. Cmwlth. 129, 572 A.2d 49, 50–51 (1990). In *Manross,* the claimant was employed as a truck driver, was aware that a valid driver's license was required for continued employment, and was arrested and subsequently convicted for driving under the influence while off-duty. The employer temporarily suspended the claimant's employment until his driver's license was restored. The claimant applied for unemployment benefits and was determined to be ineligible under both Sections 3 and 402(e). On appeal to this Court, the claimant argued, in part, that the Board erred in considering his separation under Section 402(e) based on our earlier decision in *Robinson v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 133, 546 A.2d 750 (1988).

In *Robinson,* the claimant was employed by the City of Pittsburgh as a co-driver of a sanitation truck. While off-duty and allegedly under the influence of alcohol, he was involved in a serious vehicular accident where he struck and killed a pedestrian. Criminal charges were filed against the claimant, and the city terminated his employment for conduct unbecoming a city employee. The Board determined the claimant to be ineligible for benefits under Section 402(e). The claimant appealed to this Court, arguing that the Board erred in applying Section 402(e) instead of Section 3.

Although the claimants in *Manross* and *Robinson* both engaged in the operation of a vehicle while under the influence of alcohol or intoxicants, this Court denied the claimants' entitlement to benefits under different sections of the Law. In *Robinson,* we concluded that the Board erred, because the claimant's eligibility should have been determined under Section 3 given that he was discharged on the basis of the off-duty conduct—*i.e.,* unbecoming conduct—which had no connection to his work. Conversely, in *Manross,* we concluded that the Board did not err in determining the eligibility under Section 402(e), because the basis for the separation was work-related—*i.e.,* failure to maintain a driver's license.

We explained the differing analysis of *Manross* and *Robinson* as follows:

[In *Robinson,* w]e concluded, under the circumstances presented therein, that the claimant's eligibility for benefits should have been analyzed under Section 3 since the claimant was discharged from his employment solely on the basis of the off-duty accident which had no connection to his work.

Here, by contrast [the c]laimant's temporary separation from his employment was not based upon his off-duty conduct per se, namely, operating a vehicle while under the influence of intoxicants. Rather, [the e]mployer temporarily suspended [the c]laimant from employment solely because [the c]laimant no longer held a valid driver's license and, as a

result, could no longer perform the work for which he had been hired. Unlike *Robinson*, [the c]laimant's failure to maintain a valid driver's license, a prerequisite for his continued employment, was clearly connected to his work.

*Manross*, 572 A.2d at 50.[7]

As to Section 402(e) of the Law, "[w]hile it is true that municipal employees ... may be discharged for off-duty conduct unbecoming a municipal employee, ... the fact that an employee can be discharged for off-duty conduct does not make the misconduct work-connected for the purposes of Section 402(e)." *Robinson*, 546 A.2d at 753. Again, " 'there is a critical distinction between the employer's right to terminate employment and the state's right to deny unemployment benefits.' " *Id.* (quoting *Blake v. Unemployment Comp. Bd. of Review*, 56 Pa.Cmwlth. 358, 425 A.2d 43, 45 (1981)).

In *Dunbar v. Unemployment Compensation Board of Review*, 82 Pa.Cmwlth. 575, 475 A.2d 1355 (1984), this Court rejected the notion that claimant's discharge from employment based solely on a provision of the Governor's Code of Conduct, which required Commonwealth employees charged and convicted of a felony to be discharged from employment, constituted willful misconduct under Section 402(e) of the Law.[8] *Dunbar*, 475 A.2d at 1356–57. We observed that

[a]lthough the executive may and does properly require that Commonwealth employees should obey the law off their job as well as on and may discharge them for failing to do so, a worker is not ineligible for unemployment compensation unless his discharge is for willful misconduct connected with this work.

*Id.* at 1357.

■ Here, Employer terminated Claimant's employment and the Board denied Claimant benefits under Section 402(e) of the Law based upon Claimant's off-duty conduct (*i.e.*, driving under the influence). As noted above, "[o]ff-duty misconduct will not support a finding of willful misconduct under [Section] 402(e) unless it extends to performance on the job." *Burger*, 569 Pa. at 144, 801 A.2d at 491. As in *Robinson*, Employer in this case did not terminate Claimant's employment based upon an inability to perform his job as a result of the off-duty conduct; rather, Employer terminated his employment for off-duty conduct unrelated to his work (*i.e.*, violation of the Code of Ethics).[9] (*See* Finding of Fact (F.F.) No. 14.)

Employer, nevertheless, essentially asks the Court to conclude that Claimant's off-duty conduct related to the performance of

---

7. *But see Corbacio v. Unemployment Comp. Bd. of Review*, 78 Pa.Cmwlth. 70, 466 A.2d 1117 (1983) (holding loss of driver's license where driving required for job resulted in ineligibility under Section 3 of Law).

8. Section 7.173 of the Governor's Code of Conduct, as considered by the Court in *Dunbar*, provided:

As soon as practicable after an employe has been formally charged with criminal conduct related to his or her employment with the Commonwealth or which constitutes a felony, such employe shall be suspended without pay. If such charge results in a conviction in a court of law, such employe shall be terminated.
*Dunbar*, 475 A.2d at 1357.

9. Employer, in its brief, argues that Claimant missed one day of work as a result of his incarceration, and, therefore, his actions affected his ability to work. The Board, however, in adopting the Referee's findings of fact and conclusions of law, did not find that Claimant's employment was terminated as a result of being unable to work on the day he was incarcerated. Thus, Employer's argument that Claimant was discharged because of off-duty misconduct that affected his job performance is without support.

Claimant's job, because the conduct did not comport with the requirements of Employer's Code of Ethics. Employer's Code of Ethics provides, in part, that its employees must conduct themselves at all times in a manner which brings credit to Employer and avoids an appearance of impropriety. Employer's Code of Ethics is similar to the Governor's Code of Conduct that this Court considered in *Dunbar*, which, at least implicitly, provided that Commonwealth employees must obey the law on and off the job and explicitly provided that Commonwealth employees charged and convicted of a felony may be discharged from employment. In *Dunbar*, however, we rejected the argument that the existence of the Code of Conduct somehow transformed the claimant's otherwise non-work-related off-duty conduct into work-related off-duty conduct. *Dunbar*, 475 A.2d at 1356–57; *see also Wallace v. Unemployment Comp. Bd. of Review*, 83 Pa. Cmwlth. 327, 476 A.2d 1028, 1029 (1984) (holding suspension from work based upon violation of Governor's Code of Conduct is insufficient in and of itself to support denial of benefits). Thus, in this case, a violation of Employer's Code of Ethics similarly is insufficient, in and of itself, to support a denial of benefits for Claimant under Section 402(e) of the Law.

■ For the reasons discussed above, we conclude that the Board erred in determining that Claimant's off-duty misconduct

constituted work-related misconduct under Section 402(e) of the Law.[10]

Accordingly, we reverse the order of the Board.

### ORDER

AND NOW, this 19th day of December, 2013, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

DISSENTING OPINION BY Judge LEADBETTER.

I must respectfully dissent. In addition to the Code of Ethics which required the avoidance of improprieties that would reflect poorly on the City, Claimant was twice warned that driving under the influence was unacceptable and would be "career ending." In essence, the instruction became both a work rule and an explicit directive, which Claimant knowingly disobeyed by committing not only criminal conduct, but the very criminal conduct he had been ordered to avoid. Further, the work rule and the directive were reasonable and reasonably related to his work, not only because his arrest would likely be publicized and reflect poorly on the City, but because it is important that a supervisor maintain the respect of those he is expected to supervise. Since Claimant violated a work rule and a direct order of Employer, I believe the Board properly applied Section 402(e) of the Unemployment Compensation Law[1] and found will-

---

**10.** If a claimant's conduct is not work-related such that Section 402(e) of the Law applies, a claimant, nevertheless, may be ineligible for benefits under Section 3 of the Law. Neither the Board nor Employer, however, argues in the alternative that Claimant's off-duty misconduct disqualified him from receiving benefits under Section 3 of the Law. Thus, we need not address that issue. Also, because we reverse the Board's order for the reasons set forth above, we similarly need not address Claimant's remaining arguments.

**1.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). In my view the use of Section 3 of the Law to deny benefits for "non-work related misconduct" is a flawed paradigm. Section 3 is nothing more than a statement of the purposes of the act as a whole. I do not believe it is appropriate to rely on such a generalized expression of the Law's purpose to deny benefits. Moreover, Section 402(e) can easily be utilized to analyze the cases in which we have looked to Section 3, so the

ful misconduct supporting the denial of benefits.

artificial distinction we have drawn between "work related conduct" and "non-work related conduct which affects the claimant's job duties" is unnecessary, ill-advised and confusing. However, I recognize that the distinction is a longstanding and well established doctrine binding on this court. *See Jones v. Unemployment Comp. Bd. of Review*, 513 Pa. 45, 518 A.2d 1150 (1986).